17-2304-cv
Kim v. State Farm Fire & Cas. Ins. Co.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of October, two thousand eighteen.

PRESENT:  PIERRE N. LEVAL,
     GERARD E. LYNCH,
     CHRISTOPHER F. DRONEY,
      *Circuit Judges*.

-------------------------------------------------------------------

GEUNG-HO KIM AND JAE KIM,

       *Plaintiffs-Appellants*,

     v.          No. 17-2304-cv

STATE FARM FIRE AND CASUALTY
INSURANCE COMPANY,

       *Defendant-Appellee*.

-------------------------------------------------------------------

FOR APPELLANTS:    JEFFREY R. LINDEQUIST, Law Office of
           Michael D. Parker, Springfield, MA.

FOR APPELLEES:     DOUGLAS W. DUNHAM, (Guyon H.
           Knight, *on the brief*), Quinn Emanuel

Urquhart & Sullivan, LLP, New York, NY; DANIEL P. SCAPELLATI (Carl R. Ficks, Jr., *on the brief*), Halloran & Sage LLP, Hartford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Vanessa L. Bryant, *Judge*). UPON DUE CONSIDERATION, it is ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Plaintiff-Appellants Geung-Ho Kim and Jae Kim ("the Kims") appeal from the district court's grant of summary judgment in favor of Defendant-Appellee State Farm Fire and Casualty Insurance Company ("State Farm") with respect to their claim for breach of contract, which arises from State Farm's denial of their insurance claim.[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a district court's grant of summary judgment. "It is well-settled that this court may affirm on any grounds for which there is a record

[1] The Kims also appeal the district court's dismissal of their claims for breach of the implied covenant of good faith and fair dealing and for violations of the Connecticut Unfair Insurance Practices Act and Unfair Trade Practices Act. These claims are premised on finding a breach of contract. Because we affirm the grant of summary judgment with respect to the claim for breach of contract, we need not separately review the district court's dismissal of these claims.

sufficient to permit conclusions of law, including grounds no[t] relied upon by the district court." *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016) (internal quotation marks and citation omitted).

The Connecticut Supreme Court requires that "provisions in insurance contracts must be construed as laymen would understand [them] and not according to the interpretation of sophisticated underwriters . . . ." *Vt. Mut. Ins. Co. v. Walukiewicz*, 966 A.2d 672, 678 (Conn. 2009) (internal quotation marks and citation omitted). "[T]he policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." *Id*. The words of an insurance policy must be given "their natural and ordinary meaning," and "any ambiguity in the terms [must be construed] in favor of the insured." *Conn. Ins. Guar. Ass'n v. Fontaine*, 900 A.2d 18, 22 (Conn. 2006) (internal quotation marks and citation omitted).

The Kims' insurance policy with State Farm (the "Policy") explicitly excludes coverage for the collapse of an insured dwelling that was caused by foundation concrete cracking because of the use of defective materials in the construction. Because the Policy explicitly excludes the Kims' claim, the disputed language is not ambiguous.

The Policy "insure[s] for accidental direct physical loss to the property . . . except as provided in SECTION I — LOSSES NOT INSURED." Section I expressly excludes certain losses as follows:

> 1. We do not insure for any loss to [a "dwelling"] which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> . . . l. settling, **cracking**, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings . . . .
>
> 3. We do not insure under any coverage for any loss consisting of one or more of the items below. . . . b. **defect**, weakness, inadequacy, fault or unsoundness **in**: . . . (3) **materials used in construction** or repair . . . . (emphasis added). App'x 28-29.

The Policy's section on "Losses Not Insured" concludes with the following clause:

> "However, we do insure for **any resulting loss** from [the listed exclusions] **unless the resulting loss itself is a Loss Not Insured by this Section**." (emphasis added). App'x 29

For the Kims' claim for collapse to be covered under the Policy, both of the

4

following must be true. First, a collapse that occurs as an eventual consequence of the expressly excluded conditions of "cracking" or "defect . . . in . . . materials used in construction" must be a "resulting loss" from an excluded condition, as that term is used in the concluding clause. *See* Policy ("However, we do insure for any resulting loss from [the listed exclusions] . . . ."). Second, such a collapse, even if qualifying for coverage as a "resulting loss," must not be excluded by the remainder of the clause, which reads, "unless the resulting loss itself is a Loss Not Insured by this Section." *Id.* We find that even assuming, *arguendo*, the collapse is a resulting loss, it is expressly excluded as a "Loss Not Insured by this Section."

Section I(1) of the Policy excludes any loss that "is directly and immediately caused by" cracking, "regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of [the excluded losses]." App'x 27. We conclude that the collapse was "directly and immediately caused by" the cracking, as there was no other intervening cause.

The best argument favoring the Kims is that their collapse was not "immediately" caused by cracking, because it occurred only gradually over time. The argument to the contrary is that the Policy goes on to say that a loss "directly

5

and immediately caused by" cracking is excluded "regardless of whether the loss occurs suddenly or gradually." The Kims argue that the exclusion's requirement that the collapse occur "immediately" and the provision that such collapse is excluded "regardless of whether the loss occurs suddenly or gradually" are internally inconsistent, that the Policy is therefore ambiguous, and accordingly that it must be construed in favor of the insured. *Fontaine*, 900 A.2d at 22.

We disagree. There is neither contradiction nor ambiguity. As defined by Webster's Third New International Dictionary 1129 (1986), "immediate" has several meanings. Definition 1(a) of immediate says, "acting or being without the intervention of another object, cause, or agency: DIRECT, PROXIMATE." Applying this meaning to the Policy's use of "immediate," there is no doubt that the collapse was "immediately" caused by the cracking, as there was no other intervening cause. It is true that definition 3(a) says, "occurring, acting, or accomplished without loss of time: made or done at once . . . ." If the Policy were reasonably susceptible to this interpretation of "immediate," it would indeed favor the insured. But the Policy makes clear that the meaning argued by the Kims is not a reasonable reading of the term in this context: The very same sentence that specifies the requirement of "immedia[cy]" also specifies that the collapse is

6

excluded whether it occurs "suddenly or gradually." Thus, the dictionary definition that favors the insured cannot reasonably be considered the intended meaning of the word; instead, the only reasonable interpretation of "immediate" is the alternative dictionary definition that unambiguously excludes the loss and is consistent with other language in the Policy. While a genuine ambiguity would favor the insured, the lay reader is not entitled to disregard immediately adjacent clarifying language that makes clear that an alternative interpretation favoring the insured is not the meaning of the Policy. A lay reader could not reasonably rely on the expectation that a gradual resulting collapse is taken out of the exclusion's scope by the "immediately" requirement, when the same sentence specifies that gradual resulting collapse is excluded.

We have considered the Kims' remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7